**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| EXECUTIVE RISK SPECIALTY INSURANCE CO., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. ________________ |
| SAFETY & ECOLOGY CORP., | ) | |
| Defendant. | ) | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, Executive Risk Specialty Insurance Co. ("Executive Risk") brings this declaratory judgment action against defendant Safety & Ecology Corporation ("Safety & Ecology"), seeking a declaration concerning Executive Risk's rights and obligations under the terms of a Directors & Officers Liability Insurance Policy, Policy No. 8166-0873 (the "Policy") (attached hereto as Ex. A).

## STATEMENT OF CLAIM

1. The Policy is a claims-made policy, providing insurance only for covered claims made during the Policy Period. Executive Risk seeks a judicial declaration that a *qui tam* False Claims Act lawsuit filed against Safety & Ecology, captioned *United States ex rel. Borris, et al. v. Bechtel-Jacobs, Company, LLC, et al.*, No. 02 06 873 (S.D. Ohio Oct. Jan. 25, 2002) (the "*Borris* lawsuit") (attached hereto as Ex. B), is not covered by the Policy. The *Borris* lawsuit includes allegations that Safety & Ecology provided substandard work to the United States government and knowingly submitted false claims for payment for such work. (*See*, *e.g.*, Compl.

¶¶ 31-33[1], 50, 54-55, 57-61, 84, 98.) The *Borris* lawsuit also includes allegations that Safety & Ecology failed to fulfill its contract requirements with respect to tasks and services involving environmental protection and remediation, particularly with respect to control of radioactive and chemical exposures, radioactive wastes, waste management, environmental remediation activities, and recycling of contaminated materials. (*See*, *e.g.*, Compl. ¶¶ 31-33[2], 50, 54.) Executive Risk seeks a declaration that coverage is unavailable under the Policy because: (1) the "Errors & Omissions Exclusion" (the "E&O Exclusion") in Endorsement No. 6 of the Policy bars coverage, and/or (2) the "Pollution Exclusion" in Section III(B)(2)(b) bars coverage.

**PARTIES**

2. Plaintiff Executive Risk is a corporation engaged in the business of providing liability insurance. Executive Risk is organized and exists pursuant to the laws of the state of Connecticut with its principal place of business in New Jersey.

3. Upon information and belief, Defendant Safety & Ecology provides full-service environmental, hazardous, and radiological infrastructure remediation, as well as advanced construction services. Safety & Ecology is a Nevada corporation with its principal place of business in Knoxville, Tennessee.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). There is complete diversity between the parties.

5. Executive Risk seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

---

[1] The complaint in the *Borris* lawsuit contains incorrectly numbered paragraphs. It includes three paragraphs numbered "31" and two paragraphs numbered "32." This citation refers to paragraph 31 on page 13 and paragraph 32 on page 12.

[2] This citation refers to paragraph 31 on page 13 and paragraph 32 on page 12.

6. Upon information and belief, Safety & Ecology paid $40,000 to settle the *Borris* lawsuit. In addition, Safety & Ecology alleges that it spent $83,548.71 in defense of the *Borris* lawsuit. Safety & Ecology sought these amounts, as well as damages for bad faith denial of coverage, in a separate coverage dispute lawsuit filed in the Circuit Court of Hamilton County, Tennessee.[3] Accordingly, the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) or 28 U.S.C. § 1391(a)(3). The dispute involves an insurance policy issued to Safety & Ecology, which resides in this judicial district and it is subject to personal jurisdiction in this district.

8. The Policy was delivered to Safety & Ecology at its principal place of business location in Knoxville, Tennessee. Safety & Ecology's address is also listed as Knoxville, Tennessee on the Policy's Declarations page. (Policy, Declarations, Item 1.)

## FACTUAL ALLEGATIONS

### The Policy

9. Executive Risk issued the Policy to Safety & Ecology for the period from June 10, 2000 to June 10, 2001. (*Id.*, Declarations, Item 2.)

10. The Policy contains a $2 million "maximum aggregate limit of liability for all Claims under [the] Policy." (*Id.*, Declarations, Item 3.) The limit of liability is "inclusive of Defense Expenses." (*Id.*) Coverage under the Policy is also subject to a retention of $25,000 for each Claim for Claims made against the Company or Claims made against an Insured Person when "Indemnification by the Company is legally permissible." (*Id.*, Declarations, Item 5.)

[3] Safety & Ecology brought that suit against the wrong defendant, mistakenly suing Chubb & Son Inc. ("Chubb & Son"), rather than Executive Risk, which issued and administered the Policy. Chubb & Son removed that case to federal court and filed a motion to dismiss due to Safety & Ecology's error in suing the wrong party.

11. The Policy provides, in relevant part, that Executive Risk will pay on behalf of the Company "Loss from Claims, other than Defense Claims, first made against the Company during the Policy Period for Wrongful Acts." (*Id.*, Section I(B)(2).)

12. The Policy defines "Defense Claim" as "any Claim during any time in which the Claim contains only allegations which are excluded form coverage . . . because of an exclusion set forth in EXCLUSIONS (B)." (*Id.*, Section II(D).) "Exclusions (B)" contains, *inter alia*, the Policy's Pollution Exclusion. (*Id.*, Section III(B)(2)(b).)

13. The Policy defines "Loss" to mean "Defense Expenses and damages . . ., pre-judgment interest, post-judgment interest, judgments, settlements or other amounts that an Insured is obligated to pay as a result of a Claim." (*Id.*, Section II(J).)

14. The Policy defines "Insured" as "any Insured Person and the Company." (*Id.*, Section II(H).) The term "Company" includes Safety & Ecology. (*Id.*, Section II(C); *id.*, Section II(M); *id.*, Declarations, Item 1.)

15. The Policy contains a "Pollution Exclusion," which provides that no coverage will be available for:

> any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any action taken in contemplation or anticipation of any such regulation, order, direction or request, including but not limited to any such Claim alleging damage to the Company or to its shareholders.

(*Id.*, Section III(B)(2).)

16. The Policy also contains an "E&O Exclusion," which provides that:

> no coverage will be available . . . for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under [the] Policy.

(*Id.*, Endorsement No. 6.)

<u>The Underlying Litigation</u>

17. On January 25, 2002, four relators brought a *qui tam* False Claims Act, 31 U.S.C. §§ 3729-3733, lawsuit against Safety & Ecology, Bechtel Jacobs Company, LLC, and McDonald Consulting Corporation, alleging that the defendants submitted false claims for payment to the government for environmental decontamination work performed at the Portsmouth Gaseous Diffusion Plant (the "Plant") in Piketon, Ohio. Two of the relators, Philip Borris and Rodney Gossett, alleged that they are or were employees of Safety & Ecology.

18. According to the *Borris* plaintiffs, Safety & Ecology "provided services as a subcontractor to the United States under [a] Bechtel Jacobs Contract with the Department of Energy [at the Plant]. Safety & Ecology [was] the subcontractor assigned to ensure overall site health and safety controls involving radiation control and industrial hygiene." (*Id.* ¶ 13.)

19. The *Borris* plaintiffs contend that Safety & Ecology made "false statements and claims and charged the Government for work performed in violation of contract terms, thus exposing workers unnecessarily to unlawful levels of toxic, radioactive and chemical contamination, through contact, proximity, contamination, inhalation, and ingestion . . . ." (*Id.* ¶ 32[4].) They further alleged that the defendants:

> falsely represented that their radiological surveys were in conformance with contract requirements when in fact they:
>
> a. were based upon incomplete or undocumented survey results;

[4] This citation refers to paragraph 32 on page 12.

b. were performed by inadequately trained staff and, thus, personnel not qualified to reliably perform the surveys;

c. falsely reported that radiation was within allowable limits when in fact the radiation contamination levels had not been verified;

d. were altered in violation of 10 CFR 835 by supervisors and management without basis in fact nor consistent with required contractually mandated procedures;

e. improperly allowed release of materials and areas from radiological control when the actual surveys did not justify it;

f. improperly caused areas not to be posted as hazards, as required by the contractual mandate that the work site be posted in conformance with the provisions of 10 C.F.R. 835;

g. had a high rate (50%) of failure to [sic] properly document radiation risks to safety and health at the site; and

h. falsely suggested or represented that the site was being safely managed, monitored, and remediated in accord with applicable federal environmental, health, and safety laws, including but not limited to 10 C.F.R. part 835.

(*Id.* ¶ 31[5].)

20. Plaintiffs in the *Borris* litigation also allege that Safety & Ecology "engaged in a scheme to violate the False Claims Act," contending that Safety & Ecology: (1) altered workers' time entries to ensure compensation from the Department of Energy; (2) failed to take mandatory radiological measurements, while completing records as if the measurements had been taken; (3) misrepresented radiological measurement data by basing the measurements upon surveys undertaken in a manner that could not accurately provide valid survey results, including surveys made by inadequately trained and unqualified staff; and (4) falsified radiological records. (*Id.* ¶ 33.)

21. In addition, the *Borris* plaintiffs contend that the defendants' employees "negligently, recklessly, or intentionally violated the provisions of the Government contract and subcontract agreements . . . ." (*Id.* ¶ 59.) The complaint alleges that "Defendants' management was aware of Defendants' blatant disregard for contractual requirements, including, but not limited to, Relators' internal reporting of the facts alleged herein." (*Id.* ¶ 60.) According to the

[5] This citation refers to paragraph 31 on page 13.

*Borris* plaintiffs, "Defendants intentionally, knowingly or recklessly failed to make the necessary inquiry to establish that the claims it submitted to the Government were not false or fraudulent under the False Claims Act." (*Id.* ¶ 61.)

22. The complaint contains four counts: (1) count one alleges that the defendants knowingly made false claims for payment to the United States, in violation of the False Claims Act; (2) count two alleges that the defendants took retaliatory employment action against the relators because the relators informed the Department of Energy about numerous errors and omissions perpetrated by the defendants and their employees in the course of their work performing decontamination services at the Plant, in violation of the False Claims Act; (3) count three alleges that the defendants' actions violated Ohio public policy; and (4) count four alleges that the defendants violated the Ohio Whistleblower Act, Ohio Rev. Code Ann. § 4113.52, by taking retaliatory employment action against the relators because the relators exposed errors occurring in the decontamination work at the Plant.

<u>Coverage Determination</u>

23. Safety & Ecology tendered the *Borris* litigation to Executive Risk in November 2006. After undertaking a preliminary investigation and coverage analysis, Executive Risk determined that coverage was barred under both the E&O Exclusion and the Pollution Exclusion.

**CONTROVERSY & RIPENESS**

24. Executive Risk contends that Safety & Ecology is not entitled to coverage for the *Borris* litigation because the Pollution Exclusion and the E&O Exclusion bar coverage.

25. On information and belief, Safety & Ecology disputes Executive Risk's conclusion that the Policy does not provide coverage for the *Borris* litigation and presently seeks $123,548.71 from Executive Risk which it contends is owed under the Policy.

## COUNT I

## FOR A DECLARATORY JUDGMENT THAT THE E&O EXCLUSION OF THE POLICY BARS COVERAGE FOR THE *BORRIS* LITIGATION

26. Executive Risk incorporates by reference each of the allegations of paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. As previously noted, the E&O Exclusion in the Policy provides that:

> no coverage will be available . . . for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under [the] Policy.

(*Id.*, Endorsement No. 6.)

28. As noted above, the *Borris* litigation is replete with allegations of errors, omissions, misstatements, misleading statements, and breaches of duty on the part of Service & Ecology and its employees in the course of its work at the Plant. (*See*, *e.g.*, Compl. ¶¶ 31-33[6], 50, 54-55, 57-61, 84, 98.) Accordingly, the *Borris* litigation is based on, arises out of, directly or indirectly results from, is in consequence of, or involves the performance of services for a fee by Safety & Ecology.

29. Executive Risk is entitled to a declaration that: (1) the Policy excludes coverage for the *Borris* litigation by virtue of Endorsement No. 6; and (2) Executive Risk is not obligated to provide any indemnity or defense for the *Borris* litigation.

---

[6] This citation refers to paragraph 31 on page 13 and paragraph 32 on page 12.

**COUNT II**

## II. FOR A DECLARATORY JUDGMENT THAT THE POLICY'S POLLUTION EXCLUSION BARS COVERAGE FOR THE *BORRIS* LITIGATION

30. Executive Risk incorporates by reference each of the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. As previously noted, the Pollution Exclusion of the Policy states that no coverage will be available for:

> any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any action taken in contemplation or anticipation of any such regulation, order, direction or request, including but not limited to any such Claim alleging damage to the Company or to its shareholders.

(*Id.*, Section III(B)(2).)

32. As noted above, the *Borris* lawsuit includes allegations that Safety & Ecology failed to fulfill its obligations with respect to tasks and services involving environmental protection and remediation, particularly with respect to control of radioactive and chemical exposures, radioactive wastes, waste management, environmental remediation activities, and recycling of contaminated materials. (*See, e.g.*, Compl. ¶¶ 31-33[7], 50, 54.) Accordingly, the *Borris* litigation is based upon, arises out of, directly or indirectly results from, is in consequence of, or involves exposure to, or discharge, emission, release, dispersal, escape, treatment, removal or disposal of, toxic chemicals, liquids or gases, waste materials, or other irritants, pollutants or

[7] This citation refers to paragraph 31 on page 13 and paragraph 32 on page 12.

contaminants, or a regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing.

33. Executive Risk is entitled to a declaration that: (1) the Policy excludes coverage for the *Borris* litigation by virtue of Section III(B)(2)(b); and (2) Executive Risk is not obligated to provide any indemnity or defense for the *Borris* litigation.

**OTHER COVERAGE DEFENSES**

The allegations of this Complaint are based on Executive Risk's investigation to date. Other terms and conditions of the Policy may be implicated. Nothing in this Complaint should be construed as a waiver by Executive Risk of any such other coverage defenses, and Executive Risk expressly reserves the right to raise all other terms and conditions in the Policy as defenses to coverage.

WHEREFORE, Executive Risk requests that the Court enter a declaration and judgment in its favor:

A. Declaring that, for the reasons set forth herein, the E&O Exclusion in Endorsement No. 6 of the Policy bars coverage for the *Borris* litigation and that Executive Risk has no obligation to cover the *Borris* litigation;

B. Declaring that, for the reasons set forth herein, the Pollution Exclusion in Section III(B)(2)(b) of the Policy bars coverage for the *Borris* litigation and that Executive Risk has no obligation to cover the *Borris* litigation; and

C. Awarding Executive Risk such additional declaratory and other relief as shall be found to be appropriate under the circumstances.

Dated: November 2, 2007

Respectfully submitted,

**MILLER & MARTIN PLLC**

By: ______________________________

Larry L. Cash, BPR No. 009386
832 Georgia Avenue, Suite 1000
Chattanooga, Tennessee 37402
Telephone (423) 756-6000
Facsimile (423) 785-8480
Attorneys for Plaintiff